UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- X
                                    :

JUNIOR ROBINSON,              :

          Petitioner,     :

   - against -           :

UNITED STATES OF AMERICA,  :

         Respondent.  :
-------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

**OPINION AND ORDER**

09 Civ. 2178 (SAS)
03 cr 1501(SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.   INTRODUCTION

Junior Robinson filed this pro se motion to vacate, set aside, or correct a sentence pursuant to section 2255 of Title 28 of the United States Code ("2255 Motion"). Robinson raises the following claims: (1) ineffective assistance of counsel;[1] (2) that he was "forced to trial" with an attorney with whom he had a conflict of interest; (3) that his sentence is unreasonable and excessive, in violation of the Sentencing Reform Act of 1984 and the Due Process Clause of the Fifth Amendment; (4) that his conviction violates the principle of double jeopardy in violation of the Fifth Amendment; (5) that following the Supreme Court's decision

---

[1]   Robinson was represented by two different attorneys at trial and on appeal. He makes ineffective assistance of counsel claims against both attorneys.

1

in *United States v. Booker*,[2] this Court lacked jurisdiction to impose a sentence under the United States Sentencing Guidelines or the Sentencing Reform Act of 1984; (6) that this Court lacked jurisdiction over this case because section 3231 of Title 18 of the United States Code was never passed by Congress in the manner constitutionally required; and (7) that this Court lacked jurisdiction over his case because a "polling sheet" recording the number of grand jurors concurring in the indictment was not filed with the clerk of the court, as required by Rule 6(c) of the Federal Rules of Criminal Procedure.  For the reasons stated below, Robinson's motion is denied.

## II.    BACKGROUND

On January 28, 2005, Junior Robinson, along with Ricardo Rodriguez, Paul Thompson, Jason Rose, Tai Todd, Otis Fisher, and Damion Henry,[3] was charged in an indictment with conspiracy with intent to distribute fifty grams or more of cocaine base (in a form commonly known as crack) and an unspecified amount of marijuana, in violation of sections 812, 841(a)(1), 841(b)(1)(A), 841(b)(1)(D), and 846 of Title 21 of the United States Code (Count One), and with the use and possession of a firearm in furtherance of the charged narcotics

---

[2]     543 U.S. 220 (2005).

[3]     Thompson and Henry both pled guilty before trial.

2

conspiracy (Count Two).

Evidence at trial established that two of Robinson's co-defendants,

Rodriguez and Thompson, ran a retail crack and marijuana distribution

organization in the Bronx and Vermont from 1998 to 2003.[4]  Robinson and three

other co-defendants helped manage the selling operation and sold its drugs.[5]

Additionally, members of the group used, carried, and possessed firearms in

furtherance of the drug conspiracy.[6]

Witnesses at trial included Orlando Gordon[7] and Tyrone Kindred,[8]

who testified about the drug organization's activities at 288th Street and White

---

[4]      *See* Brief for the United States of America at 6, 22, 25  (citing Trial
Transcript ("Tr.") at 337, 1664-1665,  2183, 2188-2189, 2314-2315, 2400-2401,
2466, 2500-2502), United States v. Rodriguez, No. 05-5255-cr(L) (2d Cir. Feb. 20,
2008), Ex. A to Government's Memorandum of Law in Opposition to Defendant's
Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct His Sentence
("Gov't Mem."). During this time period Robinson was arrested for selling crack
cocaine multiple times. *See id.* at 13 (citing Tr. at 730-735, 884-921, 1939-1950,
Government Exhibit ("GX") 241). He was arrested both on East 228th Street in
the Bronx and in Winooski, Vermont. *See id.* at 13, 24 (citing Tr. at 730-735, 884-
921, 1939-1950, 1965-1968, GX 241).

[5]      *See* Gov't Mem. at 6 (citing Tr. at 1668-1669).

[6]      *See id.* at 11 (citing Tr. at 1076-1077).

[7]      Gordon did not work with Robinson's group, but sold his own drugs,
with their permission, on the same block. *See id.* at 5.

[8]      Kindred was an independent drug dealer who was friendly with
Thompson. *See id.*

3

Plains Road in the Bronx.[9] Tanya Rock, another cooperating witness, testified about the organizations' activities at her house in Vermont.[10]

After a five-week trial, on March 11, 2005, the jury returned a verdict finding Robinson and his four co-defendants guilty of the narcotics conspiracy and finding Robinson and three of his co-defendants guilty of the gun charge. On September 25, 2005, this Court sentenced Robinson to a term of 240 months imprisonment for the narcotics conspiracy and a consecutive term of 60 months imprisonment on the gun charge, to be followed by a term of ten years supervised release, and a mandatory $200 special assessment. Robinson appealed his conviction challenging the seating of the jury, the sufficiency of the evidence, and the disparity in sentencing.[11] The Second Circuit affirmed Robinson's conviction.[12]

---

[9] *See id.*

[10] *See* Tr. at 2188-2228.

[11] *See United States v. Thompson,* 528 F.3d 110 (2d Cir. 2008); Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody ("2255 Motion") at 3.

[12] *See Thompson,* 528 F.3d at 122.

4

## III.   APPLICABLE LAW

### A.   Section 2255

Section 2255 allows a convicted person held in federal custody to
petition the sentencing court to vacate, set aside or correct a sentence.  Specifically,
"[s]ection 2255 provides that a prisoner sentenced by a federal court may move to
have that sentence vacated, set aside or corrected if he or she claims that the court,
in sentencing him or her, violated the Constitution or the laws of the United States,
improperly exercised jurisdiction, or sentenced him or her beyond the maximum
time authorized by law."[13]  A prisoner is entitled to a hearing on a motion filed
under section 2255 "[u]nless the motion and the files and records of the case
conclusively show that the prisoner is entitled to no relief."[14]

A properly filed motion under section 2255 must allege that:  (1) the
sentence was imposed in violation of the Constitution or laws of the United States;
(2) the sentencing court was without jurisdiction to impose such a sentence; (3) the
sentence was in excess of the maximum authorized by law; or (4) the sentence is
otherwise subject to collateral attack.[15]  Collateral relief under section 2255 is

---

[13]   *Thai v. United States*, 391 F.3d 491, 493 (2d Cir. 2005).

[14]   28 U.S.C. § 2255(b).  *See also Pham v. United States*, 317 F.3d 178,
184-85 (2d Cir. 2003).

[15]   *See* 28 U.S.C. § 2255.

5

available "only for a constitutional error, a lack of jurisdiction in the sentencing

court, or an error of law or fact that constitutes 'a fundamental defect which

inherently results in a complete miscarriage of justice.'"[16]  A motion under section

2255 must also set forth "the facts supporting each ground" for relief.[17]

## B.   Ineffective Assistance of Counsel

### 1.   Generally

A petitioner seeking to attack his sentence based on ineffective

assistance of counsel must: (1) show that counsel's performance fell below "an

objective standard of reasonableness" under "prevailing professional norms," and

(2) "affirmatively prove prejudice," *i.e.*, show that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."[18]  Only if both of these elements are

---

[16]     *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

[17]     Rule 2(b)(2) of the Rules Governing Section 2255 Proceedings for the United States District Courts. *Accord LoCascio v. United States*, 395 F.3d 51, 57 (2d Cir. 2005) ("'The petitioner must set forth specific facts which he is in a position to establish by competent evidence.'" (quoting *Dalli v. United States*, 491 F.2d 758, 760 (2d Cir. 1974)) (alteration omitted)).

[18]     *Strickland v. Washington*, 466 U.S. 668, 688, 693-94 (1984). *Accord Hernandez v. United States*, 202 F.3d 486, 488 (2d Cir. 2000) ("Under the *Strickland* standard, a petitioner must establish both (1) that counsel made errors so serious that defendant was deprived of reasonably competent representation and (2) that counsel's deficient performance prejudiced the defense.").

6

satisfied can a defendant demonstrate that his counsel made errors "so serious" that

"counsel was not functioning as the 'counsel' guaranteed by the Sixth

Amendment."[19]

There is a strong presumption that counsel's conduct falls within the

"wide range of reasonable professional assistance."[20] In analyzing a claim that

counsel's performance fell short of constitutional standards, "it is not sufficient for

the habeas petitioner to show merely that counsel omitted a nonfrivolous

argument."[21] Accordingly, a petitioner cannot prevail on a claim of ineffective

assistance simply because he disagrees with his counsel's strategy.[22] Furthermore,

---

[19] *Strickland*, 466 U.S. at 687.

[20] *Clark v. Stinson*, 214 F.3d 315, 321 (2d Cir. 2000) (quotation marks omitted). "Decisions . . . of trial strategy . . . if reasonably made, will not constitute a basis for an ineffective assistance claim." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987). A counsel's decision "whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *Id.* "Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are similarly strategic in nature." *Id.*

[21] *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001) ("Counsel is not obliged to advance every nonfrivolous argument that could be made.") (citing *Evitts v. Lucey*, 469 U.S. 387, 394 (1985)). *Accord Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("[I]t is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made.").

[22] *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (explaining that an indigent appellant does not have a constitutional right to compel appointed counsel

7

even if counsel's performance was objectively unreasonable and unprofessional, the petitioner must still demonstrate prejudice by showing "'a reasonable probability' that, but for the deficiency, 'the result of the proceeding would have been different.'"[23] "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal."[24]

### 2.   Conflict of Interest

In the context of an ineffective assistance claim based on a conflict of interest, "a defendant is entitled to a presumption of prejudice if he can demonstrate that his attorney labored under an actual conflict of interest and that the 'actual conflict of interest adversely affected his lawyer's performance.'"[25] But, a conflict of interest cannot be established with a client simply "expressing

---

to press every nonfrivolous point on appeal and recognizing "the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review").

[23]     *Aparicio*, 269 F.3d at 95 (quoting *Strickland*, 466 U.S. at 694).

[24]     *Id. Accord Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) ("[T]he 'prejudice' component of the *Strickland* test . . . focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.").

[25]     *United States v. White*, 174 F.3d 290, 295 (2d Cir. 1999) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348-49 (1980)).

8

dissatisfaction with his attorney's performance."[26] Under that circumstance, the claim "must be measured under the *Strickland* standard, which, as explained above, requires an affirmative showing of both objectively unreasonable performance and prejudice."[27]

### C.   Fifth and Sixth Amendment Rights

#### 1.   During Sentencing

The due process clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . and to be informed of the nature and cause of the accusation." In *Apprendi v. New Jersey*, the Supreme Court reiterated that "'under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged

---

[26]   *United States v. Moree*, 220 F.3d 65, 71 (2d Cir. 2000) (citing *White*, 174 F.3d at 296).

[27]   *White*, 174 F.3d at 296.

in an indictment, submitted to a jury, and proven beyond a reasonable doubt.'"[28]

However, it is permissible "for judges to exercise discretion — taking into

consideration various factors relating both to offense and offender — in imposing a

judgment within the range prescribed by statute."[29]

       In *United States v. Booker*, the Supreme Court excised the provisions

in the Federal Sentencing Act that required judges to follow the Sentencing

Guidelines in order to bring the Act into compliance with the constitutional

requirements of *Apprendi* yet preserve Congress' intent that judges have broad

sentencing discretion.[30]  After *Booker*, judges must use the Sentencing Guidelines,

but only as a tool to assist in determining the appropriate sentence within the

broader statutory range.[31]  Because the Sentencing Guidelines are advisory, there is

no *Apprendi* violation if a judge uses his or her discretion to adjust the Sentencing

Guidelines calculation based on facts relevant to sentencing that the judge finds by

---

[28]    530 U.S. 466, 476 (2000) (quoting *Jones v. United States*, 526 U.S.
227, 243 (1999)). *Accord United States v. Booker*, 543 U.S. 220, 244 (2005)
("Any fact (other than a prior conviction) which is necessary to support a sentence
exceeding the maximum authorized by the facts established by a plea of guilty or a
jury verdict must be admitted by the defendant or proved to a jury beyond a
reasonable doubt.").

[29]    *Apprendi*, 530 U.S. at 481.

[30]    *See Booker*, 543 U.S. at 265.

[31]    *See id.* at 259.

a preponderance of the evidence.[32]

## 2.    Double Jeopardy

A multiplicitous indictment violates the Double Jeopardy Clause of

the Fifth Amendment, which provides that no person "shall . . . be subject for the

same offense to be twice put in jeopardy of life or limb."[33]  "An indictment is

multiplicitous when it charges a single offense as an offense multiple times, in

separate counts, when, in law and fact, only one crime has been committed."[34]  "To

assess whether the two offenses charged separately in the indictment are really one

offense charged twice, the 'same elements' test or the 'Blockburger' test is

applied."[35]  The charges are not multiplicitous "[i]f there is an element in each

offense that is not contained in the other."[36]  "It is not determinative whether the

---

[32]    *See United States v. Vaughn*, 430 F.3d 518, 527 (2d Cir. 2005)
("[D]istrict courts may find facts relevant to sentencing by a preponderance of the
evidence . . . as long as the judge does not impose (1) a sentence in the belief that
the Guidelines are mandatory, (2) a sentence that exceeds the statutory maximum
authorized by the jury verdict, or (3) a mandatory minimum sentence . . . not
authorized by the verdict."); *United States v. Garcia*, 413 F.3d 201, 220 n.15 (2d
Cir. 2005) ("Judicial authority to find facts relevant to sentencing by a
preponderance of the evidence survives *Booker*.").

[33]    U.S. Const. amend. V.

[34]    *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999).

[35]    *Id.* at 146 (citing *Blockburger v. United States*, 284 U.S. 299 (1932)).

[36]    *Id.*

same conduct underlies the counts; rather, it is critical whether the 'offense' — in the legal sense, as defined by Congress — complained of in one count is the same as that charged in another."[37]  The ultimate touchstone of multiplicity is legislative intent; thus, even where the Blockburger test is not met, separate punishments under separate statutes for the same offensive conduct is permissible if Congress intended to permit such punishment.[38]

An increase in punishment due to consideration of a prior conviction does not violate the double jeopardy clause.[39]  This is because a defendant is only being punished for one crime with the sentence being affected by the defendant's prior criminal history.[40]

IV.   DISCUSSION[41]

A.   Robinson's Counsel Was Not Ineffective

---

[37]   *Id.*

[38]   *See Albernaz v. United States*, 450 U.S. 333, 339-42 (1981).

[39]   *See United States v. Thomas*, 930 F.2d 12, 14 (8th Cir. 1991) (citation omitted).

[40]   *See id.*

[41]   The Government contends that aside from Robinson's ineffective assistance of counsel claims, his claims are procedurally barred because he did not raise them on direct appeal.

Robinson argues that Patrick Joyce, the attorney who represented him
at trial, was ineffective because he: (1) told the jury that Robinson was guilty of the
drug charge; (2) failed to call certain witnesses that Robinson requested; (3)
stipulated to hearsay evidence at trial; (4) failed to effectively cross-examine
witnesses; and (5) failed to engage in plea negotiations or inform Robinson that the
prior felony information was admissible at trial. Robinson also argues that his
appellate counsel was ineffective for failing to move to dismiss the indictment and
for failing to raise on direct appeal claims that Robinson brings in this 2255
Motion.

Not only does Robinson fail to prove that his trial or appellate
counsel's performance fell below reasonable standards, he has also failed to prove
prejudice.[42] Additionally, many of Robinson's claims lack either a factual or a
legal basis. And, as I discuss below, even if counsel had followed Robinson's trial
strategy, it would not have changed the outcome of the case.

## 1. Counsel Did Not Concede Robinson's Guilt on the Narcotics Count

---

[42] Witnesses at trial included cooperating witnesses who worked for or
with the charged conspiracy and an independent narcotics dealer. *See Thompson*,
528 F.3d at 114. The testimony of these witnesses was corroborated by physical
evidence. *See id.* at 115. Members of the New York City Police Department
("NYPD") Gang Squad, who observed members of the conspiracy selling drugs
over a period of approximately five months, also testified. *See id.*

13

Robinson's attorney did not tell the jury that he was guilty of the

narcotics conspiracy charged in Count One. Counsel conceded the fact that

Robinson was a drug dealer.[43] This was a reasonable strategic decision in light of

the evidence presented at trial about the multiple times Robinson had been arrested

for selling drugs. This concession did not inculpate Robinson on Count One.

Instead, counsel urged the jury to find there was insufficient proof that Robinson

joined the charged conspiracy and could reasonably foresee that one of the goals of

the conspiracy was to distribute more than fifty grams of crack cocaine.[44]

### 2.    No Error in Counsel's Decision to Forgo Calling Certain Witnesses

Robinson's counsel was entitled to make a strategic decision about

which witnesses to call. The decision not to call the witnesses Robinson suggested

could have been a reasonable decision. Moreover, calling these witnesses would

not have changed the outcome of this case. As a result, this decision cannot

support a finding of ineffective assistance of counsel.

Calling Robinson's probation officer to testify that he only missed one

meeting during the time period he was purportedly selling drugs in Vermont would

not have contradicted Rock's testimony, since she stated that Robinson would

---

43      *See* Tr. at 2799-2800.

44      *See id.*

14

leave her house "for a couple of days at a time."[45]  Furthermore, the probation

officer's testimony might have had the effect of reminding the jury that Robinson

was convicted of a crime and was on probation.

Likewise, counsel's decision not to call Tewalie Proctor was

reasonable.  Robinson claims Proctor would have testified that it was he, and not

Rodriguez, who gave Robinson permission to sell drugs at 228th Street in the

Bronx (thus undermining the conclusion that Robinson was a member of the

charged conspiracy).[46]  Counsel could have reasonably concluded that any

testimony from Proctor refuting the claim that Robinson was a member of

Rodriguez's crew would have been undermined by testimony of an NYPD

detective[47] and of cooperators.

---

[45]      *Id.* at 221.

[46]      Ironically, if Proctor testified as Robinson suggests, this testimony
would have acknowledged that Robinson was a drug dealer, a concession counsel
made in closing argument, which Robinson argues constituted ineffective
assistance of counsel.

[47]      For instance, an NYPD detective testified about an undercover drug
buy she participated in, recounting how Robinson did not give a female member of
the crew permission to sell her drugs until the detective stated that she knew Flash
(Rodriguez's street name). *See id.* at 1944-1945.  Robinson also argues that
counsel should have called an internal affairs officer to testify that this female told
the officer it was her, not Robinson, who sold the drugs on this occasion.  This
testimony, however, would not have undermined Robinson's guilt because it was
consistent with the detective's testimony that he acted as the steerer in this
transaction.

15

Counsel also reasonably could have decided not to call Robinson's

girlfriend to testify that he was with her and not selling drugs every time the

Government claims he was selling drugs. Such testimony would have been

contradicted by ample evidence including police surveillance of Robinson engaged

in drug sales on 228th Street and his drug arrests on that block.

Finally, it was not unreasonable for counsel to forgo calling "Evon"

(the purported owner of the Rum Bar) as a witness. Robinson claims she would

have testified that she never saw Tyrone Kindred at the bar, which would have

refuted Kindred's testimony that he hung out with Robinson and other members of

the drug crew there. However, Robinson does not claim that "Evon" was in the bar

at all times and at all times could see all of the occupants in the bar. This

testimony, then, would not have impeached Kindred.

### 3.    Counsel Did Not Stipulate to the Admission of Hearsay Testimony Regarding Robinson's Drug Arrest in Vermont

Robinson asserts that his counsel improperly stipulated to the

admission at trial of the hearsay testimony of Officer Michael Warren at the

suppression hearing with respect to a witness who told him Robinson was coming

to her house and selling drugs. This assertion lacks factual basis. The stipulation

the parties entered into concerning Robinson's arrest in Vermont does not include

hearsay. It does not mention the source or the information provided by the source.

16

## 4. No Error in Counsel's Cross-Examination of Witnesses

Robinson argues that his attorney should have cross-examined Tanya

Rock more vigorously. He takes issue with two instances where counsel failed to

explore inconsistencies: (1) before trial, Rock gave a statement indicating that

Robinson held a knife to her cheek but at trial she testified it was Otis Fisher who

did that; and (2) Rock stated Robinson was at her house at a time when he was

actually in jail.[48] Robinson contends that his counsel should have used these

discrepancies to impeach Rock. But, it could have been a reasonable strategic

decision for counsel to avoid reminding the jury that Rock had previously accused

Robinson of holding her at knife point and that he had a drug arrest in Vermont

during the time of the charged conspiracy.

Next, Robinson argues that his counsel failed to explore

inconsistencies in Tyrone Kindred's testimony, specifically by failing to point out

(1) that Kindred's testimony about a shooting at 288th Street was in conflict with

his prior testimony about that incident in another trial (*United States v. Larry

Williams*) and (2) that Kindred testified in the *Williams* trial that he did not sell

drugs at 228th Street from 2001 to 2002 but at Robinson's trial admitted that he did

sell drugs there during that time period. This argument is frivolous. In both

---

[48]     *See* 2255 Motion at 12.

17

instances Robinson misconstrues Kindred's prior testimony in the *Williams* case; it is not inconsistent with his testimony in Robinson's case.[49]

### 5.    Pretrial Conference Transcript Shows that Plea Offers Were Issued and Robinson Knew the Prior Felony Information Would Be Admitted at Trial

Robinson's argument that counsel failed to engage in plea negotiations and did not inform him that the Government would file a prior felony information against him if he proceeded to trial is untenable. *First*, Robinson argues that he wanted to engage in plea negotiations with the government, but his counsel told him that "it was his policy to wait for the government to make an offer . . . [and] [t]he government never did."[50] But, the Government did, in fact, extend plea offers. The record of the pretrial conference, which Robinson himself

---

[49]    Specifically, Kindred testified that in approximately 2001, after his brother had been shot, he went to see Paul Thompson to obtain a gun. *See* Tr. at 1110-1120. Kindred, Thompson, defendant Jason Rose and "Snipa" all armed themselves with guns that night and went to Fenton Avenue in the Bronx. *See id.* at 1114-1119. About a week later Kindred returned to 228th Street, and from there, he and another person, armed with a gun, returned to Fenton Avenue. *See id.* at 1121. This testimony is not inconsistent with Kindred's testimony in the *Williams* trial where he only testified about the second time he went to 228th Street to get a gun and met up with Jason Rose, the "other person" referred to in his testimony in Robinson's case. *See* GX 3531-I at Tr. 1491-1492, Ex. E to Gov't Mem. Also, Kindred did not testify in *Williams* that he never sold drugs on 228th Street from 2001 to 2002. Indeed, Kindred stated he sold drugs on 228th Street in 2002. *See id.* at 1488-1489.

[50]    2255 Motion at 12.

18

attended, indicates that offers had been extended by the Government.[51] *Second*, at

the pretrial conference the Court told Robinson that his prior felony information

would be admitted if he proceeded to trial.[52] The Court asked him if he

understood, and he indicated that he did.[53] He cannot claim he was unaware of this

information.

## 6. Appellate Counsel Was Not Ineffective

Robinson argues that his appellate counsel, Steven A. Feldman,

should have moved to dismiss the indictment based on the allegedly perjurious

testimony of Detective George Duguid, the only witness to testify before the grand

jury. Again, the record does not lend any support to this claim.[54]

---

[51]     At the conference the government stated, "we are still talking to a few
of the defendants [and] [t]here may be one or two further dispositions." Transcript
of 1/26/05 Pretrial Conference ("1/26/05 Tr.") at 4:12-14. Indeed, the Government
avers that "plea offers were made to all of the defendants, and that, after the offers
were made, the Government engaged in discussions separately with each defense
counsel, including Mr. Joyce. All counsel, including Mr. Joyce, worked diligently
to attempt to secure favorable plea agreements for their clients." Affidavit of
Laurie Korenbaum, Respondent's Counsel ¶ 5. In addition, the Government met
on another occasion with all counsel, including Joyce, to discuss possible plea
dispositions for all defendants, including Robinson. *See id.* ¶¶ 3-4.

[52]     *See* 1/26/05 Tr. at 8:6-11.

[53]     *See id.* at 8:17.

[54]     Robinson argues that Duguid perjured himself by stating that Orlando
Gordon was one of his sources of information. Robinson states that Gordon
testified at trial that he did not give Duguid the information that went to the grand

To the extent that Robinson contends that appellate counsel was

ineffective for failing to raise any of these claims on appeal, this claim must also be

denied. Appellate counsel determined which issues had the most merit on appeal

and discarded other frivolous arguments that would have only impaired Robinson's

credibility before the appellate court.[55]

**B.     No Conflict of Interest With Trial Counsel**

Robinson did not have a conflict of interest with his trial counsel.  He

bases his conflict of interest claim on the same instances outlined in his ineffective

assistance of counsel claims.  These claims either lack factual basis or consist of

dissatisfaction with counsel's trial strategy.  As outlined above, these claims do not

meet the *Strickland* standard.  Similarly, they cannot establish a conflict of interest.

**C.     Robinson's Sentence Was Neither Unreasonable nor Excessive**

Robinson claims that his 240-month sentence was unreasonable and

excessive because he only engaged in "small time drug sales" and was "not a major

---

jury.  2255 Motion at 13.  To the contrary, Gordon's testimony indicates that he
began cooperating with law enforcement officials prior to Duguid's grand jury
testimony.  *See* Tr. at 1729-1730.

[55]     *See* 7/11/07 Letter from Feldman to Robinson, Attachment to
Petitioner's Traverse to Gov't Mem.

player" in the charged conspiracy.[56] This sentence was neither unreasonable nor excessive. Once the jury found Robinson guilty of Count One, this Court was required to impose the 240-month sentence (the mandatory minimum required by statute).[57]

## D.    No Double Jeopardy Violation

Robinson argues his conviction violates constitutional principles of double jeopardy because (1) evidence of a prior state court drug conviction was used to prove his participation in the conspiracy and (2) that conviction was used as the basis for the filing of a prior felony information, which enhanced Robinson's sentence on the drug count.[58]

Robinson's conviction does not violate principles of double jeopardy. He was not prosecuted twice for the same crime. The elements of the state crime (attempted criminal sale of a controlled substance in the third degree) and the federal crime (conspiring to distribute narcotics) were not the same here. There was also no double jeopardy violation because Robinson's prior conviction affected the sentence he received for the narcotics conspiracy.

---

[56]    2255 Motion at 6.

[57]    *See* 21 U.S.C. § 841(b)(1)(A).

[58]    *See* 2255 Motion at 6.

21

### E.    This Court Had Jurisdiction to Impose Sentence

Robinson appears to argue that based on *Booker*, this Court had no

authority to sentence him based on the Sentencing Reform Act of 1984.  This

Court had jurisdiction to impose a sentence on Robinson, and nothing in *Booker*

changes this.  Furthermore, *Booker* does not apply to this case because Robinson's

sentence was mandated by statute, and was not based on an application of the

Sentencing Guidelines.

### F.    This Court Had Jurisdiction over Robinson's Criminal Case

Robinson contends that this Court lacked jurisdiction over his

criminal case because section 3231 of Title 18 of the United States Code, which

confers jurisdiction on the district courts in such cases, was never passed by

Congress in the manner required by the Constitution.  This argument has no merit.

All courts that have considered this claim have rejected it.[59]

### G.    No Violation of the Federal Rules of Criminal Procedure

In his final claim, Robinson argues that this Court lacked jurisdiction

in this case because the foreperson of the grand jury failed to file a polling sheet.

---

[59]      *See, e.g., Holt v. Bush*, 321 Fed. App'x 5, 5 (D.C. Cir. 2009) (citation
omitted) (noting that "appellant's challenge to 18 U.S.C. § 3231 is frivolous, as
two circuit courts and numerous district courts have held"); *United States v.
Wolford*, No. 08-29, 2009 WL 1346034, at *2 (W.D. Pa. May 13, 2009) (finding
that "18 U.S.C. § 3231 . . . was constitutionally enacted").

22

Robinson contends that because this form was not included in the indictment, it was not filed properly.[60] The fact that the polling sheet was not included in the indictment does not indicate an error. The polling sheet is generally not publicly filed.[61] Furthermore, even if there was any error in the grand jury process here, Robinson's conviction renders any error harmless.[62]

Accordingly, these claims are insufficient to require a hearing on Robinson's 2255 Motion.

## V.   CONCLUSION

For the foregoing reasons Robinson's 2255 Motion is denied. The Court must decide whether to grant a certificate of appealability.[63]  A certificate of appealability will issue when the petitioner makes a "substantial showing of the

---

[60]    Robinson believes the lack of a polling sheet indicates that an indictment was not returned in his case. As indicated on the docket sheet, an indictment was issued by the grand jury and filed with the court. *See* 12/23/03 Indictment, No. 03 Cr. 1501, Docket Entry No. 1.

[61]    *See* Fed. R. Crim. P. 6(c).

[62]    *See United States v. Enigwe*, 17 F. Supp. 2d 390, 393 (E.D. Pa. 1998) ("[E]ven if defendant's unsupported speculation that fewer than twelve grand jurors voted to indict him or that the vote was taken after the grand jury's term had expired is correct, any error was rendered harmless by his subsequent conviction.").

[63]    *See* 28 U.S.C. § 2253(c)(1)(B).

23

denial of a constitutional right."[64] A "substantial showing" does not require a
petitioner to demonstrate that he would prevail on the merits, but merely that
reasonable jurists could debate whether "the petition should have been resolved in
a different manner or that the issues presented were 'adequate to deserve
encouragement to proceed further.'"[65] Robinson has made no such showing.
Accordingly, I decline to grant a certificate of appealability. The Clerk of the
Court is Directed to close this motion (Docket No. 1) and this case (09 Civ. 2178).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           April 27, 2010

---

[64]     *Id.* § 2253(c)(2).

[65]     *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v.
Estelle*, 463 U.S. 880, 893 n.4 (1983)). *Accord Middleton v. Attorneys Gen. of the
States of New York and Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (denying
certificate of appealability where reasonable jurists could not debate whether the
district court's dismissal of the petition was correct).

24

## - Appearances -

**Petitioner (Pro Se):**

Junior Robinson
BOP Reg. No. # 04296-748
Unit Shelby A
Federal Correctional Institution - Memphis
P.O. Box 34550
Memphis, TN 38134

**For Respondent:**

Laurie A. Korenbaum
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007
(212) 637-2266